# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

**DOCKET NO. 3:05-CV-132-W**

| | |
|---|---|
| APAC-ATLANTIC, INC., | )<br>) |
| Appellant, | )<br>) |
| vs. | )     **OPINION** |
| | ) |
| CAMBRIDGE-EASTFIELD, LLC, | )<br>) |
| Appellee. | )<br>) |

THIS MATTER comes before the Court on appeal from a final judgment of the bankruptcy court, Judge J. Craig Whitley, in Adversary Proceeding No. 04-3212, styled <u>Cabridge-Eastfield, LLC v. F.T. Williams, Inc., et al.</u> The bankruptcy court's findings of fact have not been shown to be clearly erroneous, and are hereby incorporated by reference into this Court's opinion.

A very brief synopsis of the factual background is as follows. Appellee Cambridge-Eastfield, LLC ("Cambridge"), a landowner and developer, entered into a construction contract with F.T. Williams, Inc. ("FTW"), the general contractor and Debtor in bankruptcy, to develop a mixed-use commercial/ residential property known as "Eastfield at Prosperity Village." The contract was a standard AIA construction contract that provided for a certain percentage of "retainage" to be withheld from each progress payment until substantial completion of the project. FTW then entered into a subcontract with Appellant APAC-Atlantic, Inc. ("APAC"), to perform certain paving work on the project. During the course of the project, FTW became insolvent. For reasons not entirely clear, but possibly with hopes that it could keep FTW afloat financially long enough to finish the project, Cambridge began advancing to FTW some of the money that it was supposed to retain

pursuant to the terms of the prime contract. After several months of not being paid, APAC filed a construction lien pursuant to Chapter 44A of the North Carolina General Statutes to secure its rights to any outstanding moneys owed to FTW. By the time this happened, however, Cambridge had paid out more under the prime contract than it technically owed to FTW, and so APAC's lien rights were essentially worthless.

The central legal question presented by this appeal (propounded by the appellant in several variations) is whether a subcontractor has a right of recovery against an owner-developer who fails to withhold a contractual amount of retainage from each progress payment as provided in a prime construction contract, thus diminishing the amount of retained funds available for the subcontractor to attach by way of a statutory construction lien, pursuant to N.C. Gen. Stat. § 44A-18 *et seq.*, upon the general contractor's insolvency and ultimate default. There is no authoritative North Carolina decision directly on point. Accordingly, the Court must determine this matter of first impression as it reasonably believes the state court of last resort would decide it. Hatfield v. Palles, 537 F.2d 1245, 1248 (4th Cir. 1976).

Cambridge in essence argues that it is free to administer payment under the prime contract any way it chooses. The Court agrees up to a point – a developer is free to negotiate the terms of a contract (including payment) as it likes, but once it binds itself in a contractual relationship it must typically abide by the terms as agreed upon to the extent that another party has rights and expectancies under the contract.

Certainly, however, there can be no cognizable cause of action for "negligent impairment of lien rights" in North Carolina, as APAC here claims, because the only possible source of a developer's "duty" to withhold retainage is the prime contract itself. North Carolina's statutory

scheme, unlike that of some other states,[1] does not mandate the retention of prime contract funds for the protection of subcontractors. Had Cambridge not explicitly contracted to retain a percentage of moneys due to FTW in each progress payment, it could not credibly be argued that it owed anyone a duty in fact to make such withholdings. It follows, therefore, that a North Carolina developer's "duty" to withhold retainage (if any) is purely contractual in nature, and that an injured subcontractor's right of recovery against a developer for breach of this duty (if any) sounds in contract.[2] The bankruptcy court's judgment in favor of Cambridge on APAC's counterclaims – all sounding in tort and premised on the alleged breach of a nonexistent duty of care – must therefore be affirmed.

APAC relies on a North Carolina Supreme Court case in which it was observed that a "surety has a substantial right in contractual provisions authorizing the owner to retain certain percentages of the amount due as progress payments," and therefore would be "entitled to a credit [against its obligation pursuant to a construction bond] to the extent the owner makes premature payments." Salem Realty Co. v. Batson, 123 S.E.2d 744, 751 (N.C. 1962). Persuasive authorities recognize that principles of suretyship law do not derive from third-party beneficiary status and therefore are not automatically transferrable to the latter context. See, e.g., National Surety Corp. v. United States, 118 F.3d 1542, 1544-45 (Fed. Cir. 1997). Thus, Salem Realty's holding has no direct applicability to the case at bar. Nevertheless, when the prime contract provides for the retention of funds and stipulates the conditions upon which retained funds are to be released, it is proper to inquire whether

---

[1] See, e.g., Tex. Prop. Code Ann. § 53.101 et seq. (Vernon 2007).

[2] Accord 3 Bruner & O'Connor on Construction Law § 8:36 (2006) ("In the absence of an express statutory grant, a subcontractor's right to see than an owner adheres to the prime contract's retainage provision must rest on a third-party beneficiary status.").

such provisions should be construed to have been included for the benefit of third-parties to the prime contract (such as subcontractor-creditors), the breach of which would be actionable. See Murnane Associates, Inc. v. Harrison Garage Parking Corp., 659 N.Y.S.2d 665 (N.Y. App. Div. 1997); Howell v. Worth James Construction Co., 535 S.W.2d 826 (Ark. 1976); Avco Delta Corp. v. United States, 484 F.2d 692 (7th Cir. 1973). The rub for APAC is that it did not assert any third-party beneficiary rights in the trial court, and in fact disclaimed third-party beneficiary status at oral argument. (Hr'g Tr. at 9, 28.) Accordingly, no reversible error was committed by the bankruptcy judge, and the Court need not determine whether (and under what circumstances) North Carolina might recognize unpaid subcontractors as third-party beneficiaries to a prime contract's retainage provision.

APAC's alternative argument that it should recover against Cambridge under some provision of the North Carolina lien statutes is also without merit. The language of N.C. Gen. Stat. § 44A-18(1) could not be more plain: "A first tier subcontractor. . . shall be entitled to a lien upon *funds that are owed to the contractor* with whom the first tier subcontractor dealt . . ." (emphasis added). Furthermore, a developer such as Cambridge only becomes personally liable if, "*after* the receipt of the notice of claim of lien upon funds," the developer "makes *further* payments to [the general contractor]." Id. § 44A-20(b) (emphasis added). It is undisputed that Cambridge made no "further" payments to FTW "after" receiving notice of APAC's claim of lien, and the overpayments made *prior to* the noticing of lien rights (and thus certainly not again payable to FTW on or after the date APAC first asserted a claim of lien) simply cannot be said to qualify as moneys to which APAC has a right of recovery within the meaning of these statutes. Indeed, the fact that APAC builds its case around the argument that the actions of Cambridge wrongfully "impaired" its statutory lien rights

4

belies its claim to any sort of recovery within the context of the statutory scheme in place.

Finally, as to any funds owing under the prime contract against which APAC may have successfully perfected a lien, the bankruptcy court properly set off the amounts expended by Cambridge in curing FTW's default and thus committed no discernable error by discharging the lien. See Lewis-Brady Builders Supply Co. v. Bedros, 231 S.E.2d 199, 201 (N.C. Ct. App. 1977).

For the reasons stated, the factual findings and legal conclusions of the bankruptcy court from which appeal was taken are AFFIRMED. The Clerk is DIRECTED to enter judgment pursuant to Fed. R. Bankr. P. 8016(a) and close this case.

Signed: March 28, 2007

Frank D. Whitney
United States District Judge